UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANI MORENO, | ) |
| Plaintiff, | ) Case No. 17 C 1711 |
| v. | ) Magistrate Judge Gabriel A. Fuentes |
| ELLIOT M. SAMUELS, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Elliot M. Samuels ("Samuels") moves to dismiss *pro se* plaintiff Bani Moreno's ("Moreno") amended complaint. For the reasons stated below, the motion is granted under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure for lack of sufficient allegations giving rise to subject-matter jurisdiction.

## BACKGROUND

Moreno's lawsuit claims that Samuels, a Chicago attorney, breached an oral agreement he made with Moreno's family members to represent Moreno in a criminal appeal. Samuels moved to dismiss the complaint (D.E. 60), and on September 27, 2019, the Court denied that motion in part (D.E 63). In its September 27 Order, the Court declined to revisit its earlier decision allowing the lawsuit to proceed upon the Court's initial review or "screening" of the suit under 28 U.S.C. § 1915(e)(2). (*See generally* D.E. 10.) The Court's earlier order on initial review considered, for purposes of Section 1915(e)(2), whether the action should have been dismissed as frivolous or malicious, or for failure to state a claim on which relief could be granted. *See id.* The Court, per Judge St. Eve, on June 26, 2017, declined to dismiss the action at the Section 1915(e)(2) initial

review stage on either ground and found that Moreno's amended complaint adequately pleaded a basis for diversity jurisdiction. *Id.*

This matter now is before the magistrate judge on consent. (D.E. 23, 54.) The Court has treated Samuels' current motion to dismiss as a request to reconsider the Court's June 2017 determination that jurisdictional facts were adequately pleaded. In the September 27 Order, the Court notified the parties that it was considering the diversity jurisdiction question more closely, and that they should focus their remaining briefing on whether Moreno's amended complaint set forth claims under which he could recover more than $75,000 as necessary for diversity jurisdiction. (D.E. 63).

Moreno invoked diversity jurisdiction to file this case in federal court. Am. Compl. (D.E. 11) at 1. Diversity jurisdiction only exists if the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *see also, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (explaining that the amount-in-controversy requirement exists to "ensure that diversity jurisdiction does not flood the federal courts with minor disputes"). In Samuels' motion to dismiss, he argues that the amount in controversy does not and cannot exceed $75,000.

To establish diversity jurisdiction, a plaintiff must support his assertion of the amount in controversy with competent proof and do more than "point to the theoretical availability of certain categories of damages." *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844–45 (7th Cir. 2009). "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011). "If the

2

court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The Court concludes, on a closer examination of Moreno's claims, that he has not pleaded a basis for diversity jurisdiction because his amended complaint does not give rise to damages claims of more than $75,000. Moreno claims the following damages:

- "actual damages in the amount of $12,500 for the fees paid";

- "compensatory damages in the amount of [$]150,000. [sic] for the sale of Plaintiff's home to satisfy legal fees incurred on the Appeal Process"; and

- "$200,000. [sic] in irreparable damages for the pain defendant has caused to Plaintiff and his family members"; and

- "$80,000. [sic] in punitive damages."

Am. Compl. at 6. Moreno does not specify what cause(s) of action would allow him to recover any of these categories of damages. In his briefing, he has argued that in addition to a claim for breach of contract by Samuels, he asserts a common-law fraud claim. The Court addresses his recoverable damages under both theories below.

I. **Breach-of-Contract Theory**

The crux of Moreno's complaint is that Samuels acted wrongfully when he failed or declined to represent Moreno in a criminal appeal, after Samuels told Moreno's family members that he would do so and accepted payments for a retainer fee. Am. Compl. at 4-5. Where two parties enter into an agreement and one party later fails to uphold its end of the agreement, the injured party can bring a breach-of-contract claim for the damages incurred as a result of the breaching party's wrongful conduct. The general measure of such damages, under Oklahoma law, is the amount needed to place the aggrieved party in the position in which it would have been had the contract been fully performed. *See, e.g., Sun*

3

*Ridge Inv'rs, Ltd. v. Parker*, 1998 OK 22, ¶ 11, 956 P.2d 876, 878 ("The measure of damages for breach of contract is the amount that would place the aggrieved party in the position he would have occupied had the breach not occurred."). Oklahoma law on contract remedies is therefore in accord with the time-honored rule of expectancy damages. *See Toys "R" Us, Inc. v. NBD Trust Co. of Illinois*, No. 88 C 10349, 1995 WL 591459, at *46 (N.D. Ill. Oct. 4, 1995) (citing *Hawkins v. McGee*, 146 A. 641 (N.H. 1929)).

Here, this means that, under a breach-of-contract theory, only Moreno's claimed $12,500 for fees paid would be recoverable. To the extent Moreno seeks to recover a loss based on the sale of his home, those are consequential damages that would not normally be foreseen by someone in Samuels' position and, hence, Moreno cannot recover them. *See Atlan Indus. Inc. v. O.E.M., Inc.*, 555 F. Supp. 184, 190 (W.D. Okla. 1983) ("Consequential damages must be foreseeable."); *Florafax Intern., Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, 933 P.2d 282, 293 ("lost profits from a collateral contractual relationship may be recovered in a breach of contract action if such damages can be said to have been within the contemplation of the parties at the time of contracting").

As for the $200,000 in "irreparable" damages, the Court is unclear as to what exactly Moreno means by "irreparable." His allegation referred to pain allegedly caused to him and his family members. But, in contract actions, Oklahoma does not recognize damages for mental anguish not alleged to have been produced by "some physical injury and suffering." *Seidenbach's, Inc. v. Wilson*, 1961 OK 77, 361 P.2d 185, 187. Moreno makes no such allegation here.

In addition, Moreno cannot recover punitive damages under an ordinary breach-of-contract theory. In Oklahoma, "[t]ypically, punitive damages are not recoverable solely for

breach of contract obligations." *Wilspec Techs., Inc. v. DunAn Holding Group Co. Ltd.*, 2009 OK 12, 204 P.3d 69, 74-75. Oklahoma requires the breach of contractual obligations to arise from some form of tortious conduct in order for punitive damages to be available, and even then, they are available "only in the most egregious circumstances," such as a theory rooted in tortious interference with a contractual obligation. *Id.* at 75. Nothing close to that has been – and likely could be – pleaded here.

For all these reasons, based on Moreno's pleading, it is legally impossible for Moreno to recover the jurisdictional minimum under a breach-of-contract theory—the most he could recover is the alleged contract price of $12,500 that his family members are alleged to have paid Samuels.

## II. Fraud Theory

Because, however, (1) the Court previously stated in its June 26, 2017 screening order, per Judge St. Eve, that Moreno might be able to make out a claim for fraud, and (2) punitive damages are available under Oklahoma law for fraud, *Sides v. John Cordes, Inc.*, 1999 OK 36, ¶ 15, 981 P.2d 301, 306, the Court has given Moreno's potential fraud claim a closer examination.[1] *See generally Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211–12 (7th Cir. 1995) (observing that if punitive damages are available under state law, federal courts have jurisdiction "unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount").

Under Oklahoma law, the elements of common law fraud are: "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is

---

[1] Moreno places undue weight in Judge St. Eve's earlier ruling (D.E. 10) at the Section 1915(e)(2) stage. Plaintiff's Response to Defendant's Reply to Defendant's Motion to Dismiss ("Plaintiff's Reply") (D.E. 68) at 2. The earlier ruling was made at the initial screening stage; currently before the Court is Samuels' motion to dismiss alleging the insufficiency of Moreno's pleaded jurisdictional facts, and again, the Court has chosen to take a closer look at that issue per its obligations under Rule 12(h)(3).

5

made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment." *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218. Generally, to constitute actionable fraud, false representations must relate to past or present facts, and not to promises to perform future acts. *Citation Co. Realtors v. Lyon*, 1980 OK 68, 610 P.2d 788, 790. Oklahoma, however, recognizes an exception to this general rule and allows fraud to be predicated upon a promise to do a thing in the future when the intent of the promisor is otherwise. *Id.* The Oklahoma Supreme Court explained in *Lyon* when the exception applies:

> [T]he exception to the general rule obtains where the promise to act in the future is accompanied by an intention not to perform and the promise is made with the intent to deceive the promisee into acting where he otherwise would not have done so. The gist of the rule is not the breach of promise but the fraudulent intent of the promisor at the time the pledge is made not to perform the promise so made and thereby deceive the promisee. *There is a wide distinction between the nonperformance of a promise and a promise made mala fide, only the latter being actionable fraud.* And as an exception to the usual rule excepting representations relative to future acts, the rule is limited thusly.

*Id.* (emphasis added). The exception is also reflected in Oklahoma's pattern jury instructions, which provide as follows:

> To constitute actionable fraud, false representations must generally relate to present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve matters that [(may)/(may not)] occur in the future. However, if a promise about the future is made with an intention not to perform it, and is made for the purpose of deceiving the person to whom it was made, and inducing [him/her] to act, such actions constitute fraud.

OUJI 3d § 18.8 (Rev. 2009).

> The failure of a person [(to perform a promised future act)/(to carry out a stated intention)] does not constitute a false representation of a past or present fact unless at the time [he/she] [(made the promise)/(stated [his/her] intention)] [he/she] did not then intend to [(perform the promise)/(carry out the stated intention)] and [he/she] [(made the promise)/(stated [his/her]

intention)] with the intent to deceive the promisee into acting where [he/she] otherwise would not have done so.

OUJI 3d § 18.7 (Rev. 2009).

Here, as noted, the essence of Moreno's complaint is that Samuels acted wrongfully when he failed to fulfill the promise he made to Moreno's family members that he would represent Moreno on direct appeal. Am. Compl. at 4-5; *see* Pl.'s Reply Br. 7, D.E. 64. This alleged promise is one of future performance, not a representation as to past or present facts. Thus, it could only support a fraud claim if Samuels made it with the intent not to perform in the future. Moreno makes no such allegation from which the Court could so infer, even reading his *pro se* pleading liberally. Instead, Moreno claims only that the promise Samuels made turned out not to be true. Promises that ultimately turn out to be untrue, however, do not establish that they were intentionally false at the time they were made, nor do they suggest any intention not to perform or intent to deceive. *See Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1173 (10th Cir. 1993) ("Eventual failure to perform is not evidence of intent not to do so. Thus, an allegation that a defendant intended to deceive because the alleged promise was not met is insufficient as a matter of law.").

The Court sought further clarification from Moreno at the December 12, 2019 oral argument, but Moreno's responses only confirmed that he did not have an understanding that his pleading had alleged a fraudulent promise that would be cognizable under the applicable Oklahoma law set forth above. When the Court asked Moreno where he had alleged that Samuels defrauded him, as opposed to breaking the promise Samuels allegedly made to Moreno's family members to handle Moreno's appeal, Moreno simply repeated the facts from his complaint that a promise was made and then not kept. *See* 12/12/19 Tr. at 4–5. The Court then made very clear to Moreno the difference between his allegations

(i.e., alleging breach of contract) and allegations that, at the time Samuels promised Moreno's family that he would handle the appeal, Samuels never intended to fulfill that promise (i.e., alleging fraud). In response, Moreno continued to assert broadly that Samuels committed fraud, but he stopped short of contending explicitly that Samuels intended to break the promise at the time it was made: "Yes, I am contending that. He -- he say he was going to do it. He didn't do it." *Id.* at 6. In any event, Moreno simply has not alleged, in his complaint, an intent by Samuels not to fulfill the promise at the time of contracting, or an intent to deceive Moreno or his family members in the making of that promise.

Moreno filed another brief on December 26, 2019, after the oral argument and without leave of court, which the Court nonetheless granted. In that brief, Moreno again failed to establish that he has pleaded a fraud claim based on a misrepresentation by Samuels at the time of contracting. Like Moreno's statement at oral argument, his final written submission on this subject is nearly unintelligible and fails to point to anything in the amended complaint that resembles a fraudulent misrepresentation:

> Mr. Samuels [sic] intentions from the onset were of Fraudulent Inducement and False Representation because he agreed to represent Moreno on direct appeal to extract money from Moreno's family, then alleging that he never told moreno or his family that he will be representing Moreno on direct appeal but on sentencing . . . . to extract payment from Moreno inthe [sic] auspice that he will represent Moreno on direct appeal, which he never fulfilled [sic].

Plaintiff's Reply at 2-3.

Counting Moreno's response brief (D.E. 64) filed after the Court's September 27 Order focusing the parties on the issue of recoverable damages for purposes of the amended complaint's adequacy under Rule 12(b)(1), the Court has given Moreno three

8

opportunities to explain how his amended complaint adequately establishes diversity jurisdiction, and Moreno has failed at each opportunity. His failure to plead a fraud claim appears in both the assertions he makes – in the briefing – about his amended complaint, and in the amended complaint itself. It is the pleading itself that counts. Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Looking at the amended complaint, he has not pleaded a fraud claim and is left only with his claim for breach of contract and $12,500 in damages – well short of the jurisdictional minimum.

With recovery of more than $75,000 in damages being legally impossible under Moreno's amended complaint, insofar as his claims for "compensatory," "irreparable" and "punitive" damages are not cognizable under the breach of contract he has alleged, the Court will give him another opportunity to plead diversity jurisdiction. Although there is much in the record to suggest plaintiff's inability to plead a valid complaint over which the Court has jurisdiction, so that dismissal with prejudice would be proper, the Court is concerned that Moreno has not yet had the opportunity to do so. *See Loubser v. Thacker*, 440 F.3d 430, 443 (7th Cir. 2006). He has that opportunity now, as the Court makes this dismissal without prejudice and grants plaintiff until 5 p.m. on January 31, 2020 to replead his claims.

## CONCLUSION

The Court GRANTS the motion to dismiss (D.E. 60) under Rules 12(b)(1) and 12(h)(3) without prejudice. Plaintiff is granted until 5 p.m. on January 31, 2020, to file a second amended complaint. Plaintiff is reminded that any amended complaint must comply with Rule 11 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

ENTERED:

**Gabriel A. Fuentes
United States Magistrate Judge**

Dated:   December 30, 2019